John P. Aldrich, Esq. (Resident Counsel)
Nevada State Bar #6877
Aldrich Law Firm, Ltd.
7866 West Sahara Ave.
Las Vegas, NV 89117
Tel: (702) 853-5490
jaldrich@johnaldrichlawfirm.com

*Liaison Counsel for [Proposed]
Lead Plaintiff Carlos Marina*

Reed R. Kathrein (to be admitted *pro hac vice*)
Lucas E. Gilmore (to be admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for [Proposed]
Lead Plaintiff Carlos Marina*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TAD SCHLATRE, Individually and On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MARATHON DIGITAL HOLDINGS, INC., f/k/a MARATHON PATENT GROUP, INC., MERRICK D. OKAMOTO, FREDERICK G. THIEL, and SIMEON SALZMAN,<br><br>Defendants. | Case No.: 2:21-cv-02209-RFB-NJK<br><br><u>CLASS ACTION</u><br><br>**CARLOS MARINA'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>ORAL ARGUMENT REQUESTED |

011074-11/1812006 V1

Carlos Marina respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff (ECF No. 12) and in opposition to the competing motions (ECF Nos. 10, 11, 13, and 14).

## I. INTRODUCTION

On February 15, 2022, Mr. Marina filed a timely motion under the PSLRA for an Order: (1) appointing him as Lead Plaintiff; and (2) approving his selection of Hagens Berman as Lead Counsel and the Aldrich Law Firm, Ltd. as Liaison Counsel; and (3) granting such other and further relief as the Court may deem just and proper other relief as the Court may deem just and proper. ECF No. 12. In addition to Mr. Marina's motion, motions seeking appointment as Lead Plaintiff were also filed by Cory Jay Wiedel ("Mr. Wiedel") (ECF No. 11), Evan Dana (ECF No. 10), Padma Venasithamby (ECF No. 14), and Tad Schlatre (ECF No. 13).

Under the PSLRA, the "most adequate plaintiff"—the plaintiff entitled to appointment as lead plaintiff—is the movant asserting the largest financial interest that *also* makes a threshold showing of typicality and adequacy under Rule 23 *and* is not subject to unique defenses. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). If the movant "with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729-32 (9th Cir. 2002); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for *any* reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). The PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264.

Here, Mr. Marina is the only movant entitled to appointment under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Specifically, with losses of approximately $473,905 in

OPP. TO COMPETING MOTIONS TO APPOINT LEAD PL.
AND LEAD COUNSEL
Case No. 2:21-cv-02209-RFB-NJK
011074-11/1812006 V1
-1-

connection with his Class Period transactions in Marathon securities (ECF No. 12-5), Mr. Marina possesses the largest financial interest of any movant who is capable of satisfying the adequacy and typicality requirements of Rule 23 and is not subject to unique defenses.

While Mr. Wiedel claims a larger loss than Mr. Marina, Mr. Wiedel's claimed financial interest in the case is completely inflated and he suffers from disqualifying defects that render him inadequate and atypical, thus requiring that his motion be rejected. Specifically, Mr. Wiedel purchased **all** of his shares of Marathon stock **after** the disclosures ending the Class Period on November 15, 2021. *See* ECF No. 11-3-4. Mr. Wiedel acknowledges the corrective nature of the alleged November 15, 2021 disclosures, stating in his opening brief that:

> On November 15, 2021, Marathon disclosed that "the Company and certain of its executives received a subpoena to produce documents and communications concerning the Hardin, Montana data center facility[,]" and advised that "the SEC may be investigating whether or not there may have been any violations of the federal securities law." ¶ 5.
>
> In response to this news, the Company's stock price declined 27.03%, or $20.52 per share, to close on November 15, 2021 at $55.40 per share. ¶ 6.

ECF No. 11 at 2. Despite this acknowledgement, Mr. Wiedel purchased 68,000 shares of Marathon common stock on November 15, 2021 **after** the disclosure event. *See* ECF No. 11-3-4. That Mr. Wiedel purchased all of his Marathon common stock after the sole alleged corrective disclosure portends that Mr. Wiedel has no viable securities fraud claim, is not a class member, and thus has no financial interest in the case whatsoever.

In any event, the post-disclosure purchases are fatal to his appointment as lead plaintiff. This is because they suggest that Mr. Wiedel—unlike other members of the class—chose to invest in Marathon even though he was on notice of Defendants' misstatements and omissions. Courts throughout the country reject movants like Mr. Wiedel because such post-disclosure purchases expose the entire class to the risk of dismissal if defendants refute the presumption of reliance under the fraud-on-the-market doctrine. *See, e.g., In re Hebron Tech. Co., Ltd. Sec. Litig.,* 2020 WL 5548856, at *6-8

(S.D.N.Y. Sept. 16, 2020) (denying appointment of presumptive lead plaintiff where movant bought shares at almost precisely the same time that adverse news broke and sent company's stock tumbling (and thereafter), since movant would be subject to the unique defense that he did not rely on company's alleged misrepresentations when making his purchases, or, that in establishing such reliance, movant may (unlike the putative class) be unable to invoke the presumption that, as an open-market purchaser of stock, he did so.); *Lundy v. Ideanomics, Inc.,* 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (holding that movant was disqualified because he purchased all his class period shares after the June 25, 2020 partial corrective, thereby subjecting movant to unique defenses).[1]

Indeed, given that Mr. Wiedel's November 15, 2021 purchases occurred after the issuance of the quarterly report disclosing the SEC investigation (which was filed with the SEC on November 15, 2021 and accepted by the SEC at 6:03AM ET,[2] and reported about by media outlets as early at 6:48 a.m. EDT), Defendants will argue that Mr. Wiedel ***is not even a member of the class and therefore has no financial interest in the case whatsoever***. *See* Declaration of John P. Aldrich submitted herewith ("Aldrich Opp. Decl.") at Ex. A-B; *see also In re Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572, 579 (D. Colo. 2001) (analyzing defendants' arguments regarding the timing of corrective disclosures and explaining that "the class period should end when curative information is publicly

---

[1] *See also*, *Erickson v. Snap, Inc.*, 2017 U.S. Dist. LEXIS 221050, at *7-10 (C.D. Cal. Sept. 18, 2017) ("*Snap I*") (disqualifying movant with the largest losses because his "post-corrective trading might expose [him] to unique defenses regarding whether [he] actually relied on any alleged misrepresentations"); *Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (finding that post-disclosure purchases "may well undermine the ability of [a movant] to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate"); *cf. Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (refusing to certify investor making post-class period purchases as a class representative and noting that "this Court has consistently held that 'a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative'").

[2] *See* https://www.sec.gov/Archives/edgar/data/0001507605/000149315221028278/0001493152-21-028278-index.htm).

announced or otherwise effectively disseminated to the market"). Exposing the class to this risk could be devastating and Mr. Wiedel's need to address these unique issues is disqualifying.

Critically, there is no requirement at this early stage to prove that defendants will prevail on a unique defense in order to reject a movant—only to show a degree of likelihood that the unique defense might play a significant role at trial. *See, e.g.*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (holding that a plaintiff "fails to satisfy the typicality requirement" if "it is predictable that a major focus of the litigation will be on a defense unique to him"); *Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."). There is "no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court." *Snap I*, 2017 U.S. Dist. LEXIS 221050, at *10.

With Mr. Wiedel eliminated from consideration, Mr. Marina asserts the largest financial interest of the remaining movants. Additionally, Mr. Marina easily satisfies the requirements of Rule 23 and no movant has provided "proof" that Mr. Marina is inadequate to represent the class. Accordingly, Mr. Marina respectfully submits that he is entitled to appointment as Lead Plaintiff under the PSLRA, and requests that the Court grant his motion and deny the competing motions.

## II.   ARGUMENT

Under the "straightforward" and "sequential" selection process mandated by the PSLRA, a movant's financial interest is only the starting point when evaluating a lead plaintiff movant, as the movant must also "satisf[y] the typicality and adequacy requirements [before] he is entitled to lead plaintiff status." *Cavanaugh*, 306 F.3d at 732. As such, a movant seeking appointment as lead plaintiff that does not satisfy Rule 23's requirements cannot be appointed—regardless of that movant's asserted losses. *See Cendant*, 264 F.3d at 267 ("If (for any reason) the court determines that the movant with the

largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). If the presumptive lead plaintiff is disqualified because that movant cannot demonstrate both its typicality and adequacy, "the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff"—a process which "repeats itself until a candidate succeeds in both the first and second phases of inquiry." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005).

Here, only Mr. Marina satisfies all the requirements of the PSLRA and can be appointed Lead Plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### A. Mr. Wiedel Cannot Satisfy the PSLRA's Requirements and His Motion Should be Denied.

While Mr. Wiedel claims larger losses in connection with his transactions in Marathon securities, the timing of his transactions suggests that Mr. Wiedel has no viable securities fraud claim, is not a class member and therefore has no financial interest in the litigation. In any event, the timing of Mr. Wiedel's trades creates unique defenses that undermine his adequacy and typicality and preclude Mr. Wiedel's appointment as Lead Plaintiff.

Mr. Wiedel—who asserts losses of $494,650.28—will be forced to explain how he can possibly establish the essential element of reliance when **all** of his Class Period purchases of Marathon common stock were made **after** the Company corrected Defendants' fraudulent statements on November 15, 2021. Here, the corrective disclosure regarding the pending SEC investigation was released in a quarterly report on Form 10-Q (ECF No. 1, ¶ 42), which was filed with the SEC on November 15, 2021 and accepted at ***6:03AM ET***, before market trading hours. Media outlets reported the release of the quarterly report as early as 6:48 a.m. EDT. Aldrich Opp. Decl., Ex. A. As set forth in the complaint, the quarterly report revealed the existence of the SEC's investigation of securities violations in connection with the Hardin, Montana facility transaction, and

thereby revealed that Defendants had misrepresented the Company's business and operations. *See* ECF No. 1, ¶ 42.

As noted in Mr. Wiedel's opening brief, the price of Marathon stock declined "27.03%, or $20.52 per share" in response to these disclosures. ECF No. 11 at 2. Despite the publication of these disclosures, and the accompanying stock price decline, putting investors on notice of Defendants' fraudulent statements during the Class Period, Mr. Wiedel purchased 68,000 shares of Marathon securities (the entirety of his Class Period purchases) on November 15, 2021. *See* ECF No. 11-3-4.

Mr. Wiedel has provided no evidence that his November 15, 2021 purchases occurred prior to the release of the November 15, 2021 quarterly report containing the corrective disclosures issued before the market opened. Nor can he. For example, between the closing of trading on November 12, 2021 and the opening of trading on November 15, 2021, Marathon common stock traded between $75.92 and $72.59. Aldrich Opp. Decl., Ex. B. All of Mr. Wiedel's purchases of Marathon stock were at market prices below $71, signifying that Mr. Wiedel traded after the corrective disclosure event. *Cf.* ECF No. 11-3-4.

Given his post-corrective disclosure purchases, Mr. Wiedel cannot meet Rule 23's requirements of typicality and adequacy. *See Snap I*, 2017 U.S. Dist. LEXIS 221050, at *7-10. Specifically, Defendants are likely to argue that Mr. Wiedel's post-disclosure purchases "suggest [he] invested in [company] securities notwithstanding notice of defendants' misstatements and omissions," undermining his ability "to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate." *Longtop*, 2011 WL 4597553, at *8. As explained by the court in *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596 (S.D. Ohio 2003):

> The fraud on the market theory is key to the class certification issue in securities fraud class. Without the benefit of the presumption of reliance, requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would [prevent plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones.

*Id.* at 603 (alteration in original); *see also In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) ("*Snap II*") ("Without the presumption of reliance, proof of individualized reliance from each member of the putative class would be required—which would effectively preclude class certification."). Thus, where an investor made all or a substantial portion of their purchases after corrective disclosures, defendants may be able to argue at class certification that the investor is inadequate and/or atypical because they, unlike other class members, did not rely on defendants' misstatements and omissions in purchasing the company's securities.

Importantly, whether or not defendants would ultimately prevail is irrelevant to the analysis required by the PSLRA. *See Hanon*, 976 F.2d at 509 (holding that plaintiff "fails to satisfy the typicality requirement" if "it is predictable that a major focus of the litigation will be on a defense unique to him"); *Hecla*, 2020 WL 1444934, at *7 ("Where there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."). Accordingly, Mr. Wiedel must be rejected—regardless of his claimed financial interest. *See Snap I*, 2017 U.S. Dist. LEXIS 221050, at *7-10 (denying lead plaintiff appointment of the movant with the largest losses because his "post-disclosure purchases" in the company, "expose [him] to unique defenses regarding whether [he] actually relied on any alleged misrepresentations"); *Longtop*, 2011 WL 4597553, at *8 (rejecting movant who made substantial post-corrective purchases); *Nam Tai*, 245 F.R.D. at 136 ("it has been recognized that a named plaintiff who is ***subject*** to an arguable defense of nonreliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)").

More fundamentally, if the disclosures on the morning of November 15, 2021 fully corrected Defendants' misrepresentations, as alleged in the Complaint, then investors purchasing after those disclosures—like Mr. Wiedel—***would not be a class member and would have no financial interest in the action whatsoever***. *See Ribozyme*, 205 F.R.D. at 579 (explaining that "the class period should end when curative information is publicly announced or otherwise effectively disseminated to the market").

Thus, Mr. Wiedel's trading pattern, at a minimum, presents unique issues that Defendants could credibly raise at class certification. *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *8 (movant's post-disclosure purchases of shares would saddle, or at least potentially saddle, his claims with unique defenses); *Ideanomics*, 2020 WL 7389027, at *3 (same).

These concerns are not theoretical. For example, in *Nam Tai*, the court denied class certification where the named plaintiff made "numerous post-class purchases" of the relevant stock. *See* 245 F.R.D. at 136. The court's rejection was unambiguous: "[T]his Court has consistently held that 'a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative.'" *Id.* In addition to jeopardizing class certification, the appointment of an inadequate or atypical lead plaintiff undermines the prosecution of the entire class's claims because that lead plaintiff's subsequent disqualification could force the Court to reopen the lead plaintiff selection process or expose absent class members to statute of limitations and statute of repose concerns. *See, e.g.*, *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses").

Regardless of the outcome, the timing of Mr. Wiedel's trading is a critical issue for him alone, is irrelevant for the class, and renders Mr. Wiedel inadequate. *See Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) (denying class certification where movant's unique issues were "paramount, since for him it means the difference between a substantial recovery and no recovery at all.").

There is "no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff"—Mr. Marina, whose Class Period purchases ***all*** occurred before any corrective disclosures, *see* ECF No. 12-7—"is also before the Court." *Snap I*, 2017 U.S. Dist. LEXIS 221050, at *10; *see also Longtop*, 2011 WL 4597553, at *8 ("[T[his Court sees no reason to subject the class to this potential defense where there

is another movant . . . that purchased the vast majority of its . . . shares before the first corrective disclosure."). Accordingly, the Court should deny Mr. Wiedel's motion for appointment as Lead Plaintiff.

**B.     Mr. Marina Should Be Appointed Lead Plaintiff**

With Mr. Wiedel removed from consideration, Mr. Marina is the only movant capable of satisfying the PSLRA's largest financial interest, adequacy, and typicality requirements. As an initial matter, with losses of approximately $473,905.41 in connection with his Class Period purchases of Marathon securities, see ECF No. 12-5, Mr. Marina suffered the largest losses of the remaining competing movants:

| Movant | Claimed Losses |
|---|---|
| ~~Cory Jay Wiedel~~ | ~~$494,650.28~~ |
| **Carlos Marina** | **$473,905.41** |
| Evan Dana | $184,571.98 |
| Pathma Venasithamby | $57,433.96 |
| Tad Schlatre | $38,529.00 |

In addition to possessing the largest financial interest of the remaining movants, Mr. Marina, as demonstrated in his opening brief and accompanying declaration, see ECF Nos. 12 & 12-6, readily meets the applicable adequacy and typicality requirements under Rule 23. Indeed, Mr. Marina has affirmatively demonstrated his commitment and ability to zealously prosecute this litigation for the benefit of the class and, unlike Mr. Wiedel, is not subject to any unique defenses.

Because there is no "proof" undermining Mr. Marina's typicality and adequacy, Mr. Marina should be appointed as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Cavanaugh*, 306 F.3d at 741 ("[B]y statute, the presumption of most adequate plaintiff may be overcome only upon proof that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interests of

the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'").

### C. The Remaining Motions Should Be Denied

Given that Mr. Marina has satisfied all the PSLRA's requirements for appointment as Lead Plaintiff, and each of the remaining movants asserts a smaller financial interest, *see supra* §II.B., the Court need not consider the remaining competing motions. *Cavanaugh*, 306 F.3d at 741.

### III. CONCLUSION

For the reasons stated herein, Movant respectfully requests that the Court: (1) appoint him as Lead Plaintiff; and (2) approve his selection of Hagens Berman as Lead Counsel and the Aldrich Law Firm, Ltd. as Liaison Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: March 1, 2022    ALDRICH LAW FIRM, LTD

By    /s/ John P. Aldrich
John P. Aldrich, Esq.
NV Bar No. 6877
7866 West Sahara Ave.
Las Vegas NV 89117
Tel. 702.853.5490
Fax. 702.227.1975
Email: jaldrich@johnaldrichlawfirm.com

*Liaison Counsel for [Proposed] Lead Plaintiff Carlos Marina*

Reed R. Kathrein (to be admitted *pro hac vice*)
Lucas E. Gilmore (to be admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (to be admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff*
*Carlos Marina and [Proposed] Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2022, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the email addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

**ALDRICH LAW FIRM, LTD.**

*/s/John P. Aldrich*
John P. Aldrich, Esq.