**THE O'MARA LAW FIRM, P.C.**
David C. O'Mara
311 East Liberty St.
Reno, Nevada 89501
Tel: 775-323-1321
Fax: 775-323-4082
Email: david@omaralaw.net

**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Movant Cory Jay Wiedel*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TAD SCHLATRE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MARATHON DIGITAL HOLDINGS, INC. f/k/a MARATHON PATENT GROUP, INC., MERRICK D. OKAMOTO, FREDERICK G. THIEL, and SIMEON SALZMAN,<br><br>Defendants. | Case No. 2:21-cv-02209-RFB-NJK<br><br>**CORY JAY WIEDEL'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>**HEARING REQUESTED** |

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................................. 1

II. ARGUMENT ........................................................................................................................... 3

   A. Mr. Marina, Nor Any of the Other Movants, Have Submitted Proof to Rebut Mr. Wiedel's Presumption of "Most Adequate Plaintiff". ......................................................... 3

   B. The Court Should Reject Mr. Marina's Belated Argument that the Initial Complaint Should Have Defined the Class Period Differently. ........................................................... 4

      1. The Class Period is Defined By All Parties as October 13, 2020 and November 15, 2021, inclusive. ................................................................................................................ 4

      2. If Allowed, Mr. Marina Will Gravely Prejudice the Class by Disregarding the "Post-Class Period Event" in Favor of Relying Solely on the "Investigation" Announcement. ................................................................................................................. 6

      3. Trading Data and Analyst Coverage Show that the Market Did Not Digest the "Investigation" News until After the Class Period Ended. ............................................. 8

   C. Mr. Marina and the Other Movants Are Adverse to the Class or Otherwise Inadequate to Serve as Lead Plaintiff. ........................................................................................................ 10

ii

CORY JAY WIEDEL'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
NO. 2:21-cv-02209-RFB-NJK

Lead plaintiff movant Cory Jay Wiedel ("Mr. Wiedel") respectfully submits this memorandum of law in reply to the competing lead plaintiff motions and in further support of his motion ("Motion") for (i) appointment as Lead Plaintiff in the above-captioned action (the "Action"); and (ii) approval of his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel for the proposed Class and The O'Mara Law Firm P.C. ("O'Mara") as Liaison Counsel.[1]

## I. PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") mandates that the Court appoint the "most adequate plaintiff" to serve as lead plaintiff and provides a presumption that the most adequate plaintiff is the movant that "has the largest financial interest in the relief sought by the class" that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B). Mr. Wiedel fits that bill.

As demonstrated in Mr. Wiedel's opening memorandum of law, and opposition to the competing lead plaintiff motions (ECF. Nos. 11, 16), Mr. Wiedel satisfies all of the requirements to be the "presumptively most adequate plaintiff" under the PSLRA, including having the largest financial interest in the relief sought by the class. No other movant has disputed Mr. Wiedel having the largest loss, but rather it is now claimed Mr. Wiedel suffers from a "unique defense". Not so.

The Complaint alleges that on November 15, 2021, a disclosure in Marathon's 10-Q revealed that "the Company and certain of its executives received a subpoena to produce documents and communications concerning the Hardin, Montana data center facility[,]" and advised that "the SEC may be investigating whether or not there may have been any violations of the federal securities law." Complaint, ¶ 5. All movants, including the only remaining competing movant, Mr. Marina, defined the class to include investors who purchased *on* November 15, 2021

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Cory Jay Wiedel's Motion For Appointment As Lead Plaintiff And Approval Of Selection Of Counsel; And Memorandum Of Points And Authorities. *See* ECF No. 11.

in their opening papers. *See* ECF No. 12 ("This action is on behalf of all persons who purchased the publicly traded securities of defendant Marathon Digital Holdings, Inc. . . . between October 13, 2020 and November 15, 2021, **both dates inclusive** . . . ." (emphasis added). They also advertised for clients using these dates and class period. But now, after learning that Mr. Wiedel has the largest financial interest, Mr. Marina betrays the class and argues in contradiction to his opening papers and his counsel's previous attorney advertising that purchases made on November 15, 2021 render class members atypical notwithstanding the fact that these purchases were made during the class period.

Mr. Marina's argument squarely conflicts with the interests of the class and, indeed, three of the five shareholders who moved for lead plaintiff (including the initial named plaintiff). The class period in this Action is and always has been defined as October 13, 2020 to November 15, 2021, both dates inclusive. The case law overwhelmingly holds that courts should rely on the "most inclusive class period" when selecting a lead plaintiff. *Hardy v. MabVax Therapeutics Holdings,* No. 18-cv-01160-BAS-NLS, 2018 WL 4252345, at *4 (S.D. Cal. Sept. 6, 2018). That holds especially true here when, indisputably, there is only one class definition presently before the Court. Allowing Mr. Marina or any of the other lead plaintiff movants to alter that definition now would amount to an endorsement of the "gamesmanship" that courts routinely reject when movants attempt to gin up a basis for amending a class period at the eleventh hour. *Topping v. Deloitte Touche Tohmatsu CPA,* 95 F. Supp. 3d 607, 619-20 (S.D.N.Y. 2015) (When considering motions for lead plaintiff, the court refused to consider new allegations added in a "Corrected Complaint" filed after the PSLRA's 60-day limit).

In addition to the law, the facts also fail to support Mr. Marina. The complaint at bar alleges that Marathon's quarterly report on Form 10-Q disclosed that the company had "received a subpoena to produce documents and communications concerning the Hardin, Montana data center facility…[and] that the SEC may be investigating whether or not there may have been any violations of the federal securities law." ECF No. 1, ¶ 42. Importantly, the complaint *also* alleges that Marathon's Chairman, and former CEO Defendant Okamoto abruptly resigned just four

weeks after the announcement of the investigation. *Id*. at ¶ 45. This subsequent allegation is essential to the viability of this Action because, as Mr. Marina should understand, the announcement of an investigation in and of itself does not constitute a corrective disclosure under Ninth Circuit law. *Lloyd v. CVB Fin. Corp.,* 811 F.3d 1200, 1209-10 (9th Cir. 2016). Thus, Mr. Marina's willingness to disregard the "post-class period event" and rely solely on the "investigation" announcement would be extremely prejudicial to injured class members. Courts do not appoint as lead plaintiff movants who appear willing to sabotage the class for their own self-interested reasons.

Finally, the announcement of the SEC investigation was hardly an indictment of fraud, which distinguishes the facts at hand from the ones addressed by the courts in the decisions relied upon by Mr. Marina in his brief. This is significant insofar as it took the market time to "digest" the information contained in Marathon's quarterly report on November 15, 2021. Intraday trading data shows that Marathon's stock price did not start to decline until late in the trading session. Contrary to Mr. Marina's supposition that the quarterly report was "reported by news outlets as early as 6:48 a.m. EST" it was not until the following day when reputable analysts first began discussing it. This explains why Marathon's stock opened at approximately the same price on November 15, 2021 as it did the previous trading day, and did not decline until November 16, 2021.

The Court should not allow Mr. Marina to jettison millions in losses from the class solely for the benefit of himself and his counsel. Accordingly, Mr. Wiedel should be appointed lead plaintiff in the action.

## II. ARGUMENT

### A. Mr. Marina, Nor Any of the Other Movants, Have Submitted Proof to Rebut Mr. Wiedel's Presumption of "Most Adequate Plaintiff".

Mr. Wiedel is the presumptively most adequate plaintiff as he has the largest financial interest in the litigation, having lost $494,650.28 from trading in Marathon securities during the Class Period. That is nearly two times, or $230,228.87 more than Mr. Marina. Mr. Marina,

originally claiming a loss of $473,905.41, actually lost 44% less than he represented to the Court – only $264,421.41 – after he miscalculated his losses, suggesting his own inadequacy. *See Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("[T]he exaggerated loss totals originally submitted by the Aroras represented no slight error; it was an error of some 34%. The error struck at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation.").

The presumption that Mr. Wiedel is the most adequate plaintiff may be rebutted only upon "proof" that Mr. Wiedel "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Cavanaugh*, 306 F.3d 726, 740-41 (9th Cir. 2002) ("the presumption of most adequate plaintiff may be overcome only upon proof that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interests of the class'"). Speculation and conclusory assertions are insufficient. *See Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) (collecting cases). Even if a movant is subject to a defense, the existence of the defense in and of itself is not disqualifying, if the defense is not unique. *In re Providian Fin. Corp. Sec. Litig.*, No. C 01–03952 CRB, 2004 WL 5684494, at *5 (N.D. Cal. Jan. 15, 2004) ("even if [plaintiff] is subject to a defense based on its purchases after the disclosure, such a defense is not unique to [plaintiff], and is equally applicable to other potential class members").Mr. Marina and the other movants do not meet this standard.

**B. The Court Should Reject Mr. Marina's Belated Argument that the Initial Complaint Should Have Defined the Class Period Differently.**

**1. The Class Period is Defined By All Parties as October 13, 2020 and November 15, 2021, inclusive.**

Tad Schlatre commenced this action on December 17, 2021. In his complaint, he defined the class as: "consisting of all persons and entities other than Defendants that purchased or otherwise acquired Marathon securities between October 13, 2020 and November 15, 2021, both dates inclusive'. ECF No. 1, at ¶ 1. Thus, the class period in this case is October 13, 2020 to

November 15, 2021, both dates inclusive. This has always been the class period and it has never changed. Only now, well-after the 60-day deadline for filing lead plaintiff motions, does Mr. Marina effectively seek to amend the class period and shorten it by a day so that he can claim status as "most adequate plaintiff" to serve as lead plaintiff in this Action. This maneuver is contrary to the law and smacks of gamesmanship.

Mr. Marina could have filed a complaint at any time prior to the 60-day deadline amending the class period to reflect what he now claims is the correct class period end-date of November 14, 2021. Yet he did not; to the contrary, his counsel has been advertising the November 15, 2021 end-date consistently since the commencement of this action. *See* Declaration of David O'Mara submitted herewith ("O'Mara Reply Decl.") at Ex. A, attaching 25 MARA Press Releases from Mr. Marina's counsel, Hagens Berman. In each press release, Mr. Marina's counsel explicitly solicited investors who purchased Marathon securities from October 13, 2020 through November 15, 2021. Mr. Marina, by virtue of his counsel's actions, should be estopped from changing his position on this issue at this late hour in the day. *See United States v. Lence*, 455 F.3d 1047 (9th Cir. 2006) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. Most commonly the doctrine is applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one.") (internal quotations and citations omitted). Moreover, Mr. Marina retained his counsel and signed a PSLRA certification as early as January 11, 2022, more than one month before the lead plaintiff deadline of February 15, 2022. Mr. Marina's counsel continued to advertise for this same class period up until February 14, 2022, even after reviewing Mr. Marina's transactions in Marathon. There is no explanation for changing the class period at this point in time, aside from clear gamesmanship of securing the appointment as lead counsel.

One of Congress's primary purposes behind enacting the PSLRA was to prevent if not eliminate the sort of "lawyer-driven litigation" that existed previously. *Tollen v. Geron Corp.*, No. C 20-00547 WHA, 2020 WL 2494570, at *4 (N.D. Cal. May 14, 2020) ("One of the purposes

of the PSLRA is to prevent lawyer-driven litigation, and to ensure that the lead plaintiff is the one who actively manages the litigation on behalf of the class, not counsel."). In that vein, courts routinely reject attempts by lawyer-driven litigants to alter class periods at the eleventh hour on the basis that doing so amounts to the precise sort of "gamesmanship" that Congress sought to abolish. *Topping*, 95 F. Supp. 3d at 619-20. Thus, the Court should not allow Mr. Marina to change the class period now, after the 60-day deadline has elapsed to benefit himself and his counsel at the expense of the class.[2] *See Evellard v. LendingClub Corp.,* No. C 16-02627 WHA, 2016 WL 9108914, at *3 (N.D. Cal. Aug. 15, 2016) ("[A]n important consideration in selecting the lead plaintiff is to estimate the class period. Lead plaintiff candidates will typically stretch or shrink the class period in order to jockey for position so as to wind up with the largest loss."); *Plaut v. The Goldman Sachs Grp., Inc.,* No. 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sep. 19, 2019) ("Based upon the certification error and the filing of the amended complaint ***twenty days after the deadline*** for motions to serve as lead plaintiff, I find it would be inappropriate to select Meitav as lead plaintiff.") (emphasis added).

## 2. If Allowed, Mr. Marina Will Gravely Prejudice the Class by Disregarding the "Post-Class Period Event" in Favor of Relying Solely on the "Investigation" Announcement.

"The lead plaintiff owes a fiduciary duty to all members of the proposed class to provide fair and adequate representation and actively to work with class counsel to obtain the largest recovery for the proposed class consistent with good faith and meritorious advocacy." *In re Network Assocs. Sec. Litig.,* 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999). Notwithstanding and contrary to this black-letter law, Mr. Marina seeks to sabotage the class for his and his counsel's

---

[2] Even if, *arguendo*, one of the lead plaintiff movants had filed a prior complaint or put in their preliminary motion a "correction" to the Class Period, using the most inclusive Class Period at this stage in the proceedings is appropriate. *See MabVax Therapeutics Holdings*, 2018 WL 4252345, at *4, 6 ("As a general matter, 'courts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest ***under that period***.") (emphasis added); *see also Miami Police Relief & Pension Fund v. Fusion-io, Inc.,* No.: 13–CV–05368–LHK, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs.").

1  own self-interest.

2        The announcement of an investigation, in and of itself, is not a "corrective disclosure"
3  under Ninth Circuit law. *Lloyd,* 811 F.3d at 1209-10. This is why the complaint presently on file
4  incorporates the "post-class period disclosure" concerning the resignation of Marathon's
5  Chairman. Indeed, the complaint specifically alleges that "[o]n December 15, 2021 Marathon
6  announced that Defendant Okamoto 'plans to retire at the end of 2021' and that the Board 'has
7  appointed [Defendant] Thiel, Marathon's current CEO, to succeed Okamoto on January 1, 2022,
8  at which time, Thiel will maintain the responsibilities of both chairman and CEO.'" ECF No. 1 at
9  ¶ 45.

10       Mr. Marina does not mention this key allegation even once in his entire opposition.
11 Instead, he opts to rely solely on the "investigation" announcement which, if allowed to proceed
12 under this theory, would effectively doom the Action. In fact, Mr. Marina goes so far as to say
13 that the "disclosures on the morning of November 15, 2021 fully corrected Defendants'
14 misrepresentations, as alleged in the Complaint", completely ignoring the post-class period
15 disclosure. *See* ECF No. 19 at 7. Courts routinely reject lead plaintiff movants as inadequate
16 where, as here, they take positions adverse to the interests of the class for no purpose other than
17 their own benefit. *Union Asset Mgmt. Holding AG v. Sandisk Corp.,* No. 15-cv-01455-VC, 2016
18 WL 406283, at *5 (N.D. Cal. Jan. 22, 2016) ("Though [the PSLRA] was designed to curb
19 gamesmanship among securities plaintiffs, it has given rise to new forms of gamesmanship. In
20 particular, it appears that securities plaintiffs sometimes manipulate their proposed class period
21 in an effort to establish themselves as the presumptive lead plaintiff[.]"). "The specter of
22 gamesmanship on these facts causes the Court to question whether [Mr. Marina] will 'fairly and
23 adequately protect the interests of the class.'" *Maliarov v. Eros Int'l PLC,* 15-CV-8956 (AJN);
24 16-CV-223 (AJN), 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016) (quoting 15 U.S.C. § 78u-
25 4(a)(3)(B)(iii)(II)(aa)).

26       These facts set this case apart from the ones relied upon by Mr. Marina in his brief. In
27 *Hebron*, the corrective disclosure was a presentation of a report that evidenced Hebron's
28

controlling shareholder owned several companies that Hebron had acquired, making their acquisitions undisclosed third party transactions. *In re Hebron Tech. Co. Sec. Litig.*, 20 Civ. 4420 (PAE), 2020 WL 5548856, at *2 (S.D.N.Y. Sep. 16, 2020). A similar corrective disclosure to *Hebron* was present in *Snap* and is also inapposite to the case at hand. *See Erickson v. Snap, Inc.,* No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, at *1 (C.D. Cal. Sep. 18, 2017) (The corrective disclosure ending the class period involved the filing of a whistleblower lawsuit by a former employee, alleging claims that Snap was falsely representing its engagement metrics, including its daily active user growth, and was fired after reporting the issue.)

Unlike the corrective disclosures in *Hebron* and *Snap*, the disclosure in this Action was the announcement of an SEC investigation in a quarterly report on Form 10-Q.[3] It did not accuse anyone of fraud or wrongdoing. Thus, purchases of Marathon's securities during the trading day on November 15, 2021 were not made with knowledge of the allege fraud and cannot serve as a basis for narrowing the class. *See In re Montage Technlogy Grp. Ltd. Sec. Litig.,* No. 14-CV-00722-SI, 2016 WL 1598666, at *4 (N.D. Cal. Apr. 21, 2016); *In re Connetics Corp. Sec. Litig.,* 257 F.R.D. 572, 576 (N.D. Cal. 2009); *In re Tronox, Inc. Sec. Litig.,* 262 F.R.D. 338, 345-46 (S.D.N.Y. 2009) (holding that stock purchases following a corrective disclosure did not render a lead plaintiff movant atypical since the "true extent" of the fraud had not yet been revealed)*; In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 WL 1180267, at *4 (N.D. Cal. May 3, 2006) (finding a plaintiff who purchased shares after the corrective disclosures typical); *In re Providian,* 2004 WL 5684494, *4-5; *In re Emulex Corp. Sec. Litig.,* 210 F.R.D. 717, 719 (C.D. Cal. 2002).

### 3. Trading Data and Analyst Coverage Show that the Market Did Not Digest the "Investigation" News until After the Class Period Ended.

Importantly, Marathon's stock price remained artificially inflated during the course of the

---

[3] The additional cases Mr. Marina cites for the same premise as *Hebron* and *Snap* are similar, and therefore fail for the same reasons. Moreover, the cases are out-of-circuit and therefore unauthoritative.

1  November 15 trading session, as evidenced by intraday trading information. O'Mara Reply. Decl.,
2  Ex. B. Mr. Wiedel and, for that matter, Tad Schlatre, who filed the initial complaint, and Pathma
3  Venasithamby, who moved for lead plaintiff, all have standing to pursue the damages they
4  sustained when purchasing Marathon securities when relying on the integrity of the market price
5  just like all other unnamed class members who purchased securities on November 15, 2021. *See*
6  *Cornerstone Propane Partners,* 2006 WL 1180267, at *5; *In re LDK Solar Sec. Litig.,* 255 F.R.D.
7  519, 528 (N.D. Cal. 2009).

   Marathon's stock price did not react immediately to the "investigation" announcement
9  within the quarterly report because, in part, it was **not** the subject of any widespread reports by
10 media outlets as Mr. Marina claims. ECF No. 19 at 3. What Mr. Marina refers to as "report[] by
11 media outlets" appears to instead be an obscure message in text format registering the filing of
12 the quarterly report itself. The following is what Mr. Marina refers to when claiming the issuance
13 of the quarterly report was "reported about by media outlets as early at [sic] 6:48 a.m. EDT":

---

Case 2:21-cv-02209-RFB-NJK   Document 19-2   Filed 03/01/22   Page 2 of 2

```
Wire: Edgar SEC-Online (EDG)
Date: Nov 15 2021  6:48:52
Marathon Digital Holdings, Inc.: 10-Q 2021/09/30

COMPANY: Marathon Digital Holdings, Inc.
FORM: 10-Q
PERIOD: 2021/09/30
LANG: English
SIC: 7374

AccessionId: 0001493152-21-028278
Type {MARA &lt;Equity&gt; CF &lt;GO&gt;} to view company filings

-0- Nov/15/2021 11:48 GMT

-------------------------===================-----------------------------
              Copyright (c) 2022

################################ END OF STORY 1 ################################
```

---

   This is the "report by media outlets" that Mr. Marina claims placed the market on notice
26 of the "investigation" announcement in the quarterly report and impacted Marathon's stock price

9
CORY JAY WIEDEL'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
NO. 2:21-cv-02209-RFB-NJK

immediately upon the opening of the trading session. Suffice it to say that Mr. Marina's argument lacks credibility. Indeed, Marathon's stock price history shows that the "investigation" was digested through the course of the trading session on November 15, 2021 and was not reflected fully in the stock price until the following day when reputable analysts began to report on news. In particular, on November 16, 2021, D.A. Davidson reported on the "investigation" in its report, stating that "After a big run, Marathon sold off hard yesterday, closing down 27%. While there was an SEC investigation in the 10-Q, we think the pullback was more due to the convert which was upsized to $650M. We don't see much risk around the potential securities violation and would use any further weakness as a buying opportunity." O'Mara Reply. Decl., Ex C. This explains why Marathon's stock price opened 29% lower on November 16, 2021 than it did on November 15, 2021. O'Mara Reply Decl., Ex. D.

### C. Mr. Marina and the Other Movants Are Adverse to the Class or Otherwise Inadequate to Serve as Lead Plaintiff.

Mr. Marina has clearly taken a position that is prejudicial to the class. If this Court were to determine that Mr. Marina has rebutted the presumption in favor of appointing Mr. Wiedel, the Court should still reject Mr. Marina's lead plaintiff motion because he is an inadequate representative. "The lead plaintiff owes a fiduciary duty to all members of the proposed class to provide fair and adequate representation and actively to work with class counsel to obtain the largest recovery for the proposed class consistent with good faith and meritorious advocacy." *Network Assocs.*, 76 F. Supp. 2d at 1032. Mr. Marina has put his own interests above those of the class, as the arguments raised in his opposition risk cutting out a substantial portion of class members and evidences he is willing to jettisoning class damages, contrary to his "interest in vigorously pursuing this action on behalf of the entire Class." "[I]t is unclear why a plaintiff would argue for a shorter class period at th[e] [lead plaintiff] stage, which would have the effect of reducing the class size and limiting the potential amount of damages, ***unless it was in the best interest of that particular plaintiff only***."). *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (emphasis added). Accordingly,

10

CORY JAY WIEDEL'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
NO. 2:21-cv-02209-RFB-NJK

Mr. Marina's lead plaintiff motion should be denied. CONCLUSION

Since Mr. Wiedel is the presumptively most adequate plaintiff, and Mr. Marina and the other movants have failed to rebut the strong presumption, Mr. Wiedel should be appointed as and his selection of counsel should be approved. *See Tronox*, 262 F.R.D. at 344 (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry"). For the foregoing reasons, Mr. Wiedel respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Mr. Wiedel as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, (3) granting such other relief as the Court may deem just and proper; and (4) denying all other competing motions.

//

Dated: March 8, 2022                    Respectfully submitted,

**THE O'MARA LAW FIRM, P.C.**

*/s/ David C. O'Mara*
David C. O'Mara
311 East Liberty St.
Reno, Nevada 89501
Tel: 775-323-1321
Fax: 775-323-4082
Email: david@omaralaw.net

*Liaison Counsel for Cory Jay Wiedel and [Proposed] Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton*
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com
**pro hac vice* forthcoming

*Lead Counsel for Cory Jay Wiedel and [Proposed] Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2022, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the email addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

                    */s/ David C. O'Mara*
                    David C. O'Mara

INDEX OF EXHIBITS

| Exh No. | Description | Pages |
|---|---|---|
|  | Declaration of David C. O'Mara | 2 |
| A | Press Releases Seeking Lead Plaintiff Movants | 58 |
| B | Marathon Intraday Price Chart November 21, 2021 | 2 |
| C | Analyst Report by DA Davidson dated November 16, 2021 | 5 |
| D | Marathon Trading Prices According to Yahoo! Finance between November 12, 2021 and November 16, 2021 | 2 |

13

CORY JAY WIEDEL'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
NO. 2:21-cv-02209-RFB-NJK