2:21-cv-02209-RFB-NJK

```
 1                  UNITED STATES DISTRICT COURT

 2                        DISTRICT OF NEVADA

 3

 4  TED SCHLATRE, individually    )
    and on behalf of all others   ) Case No. 2:21-cv-02209-RFB-NJK
 5  similarly situated,           )
                                  ) Las Vegas, Nevada
 6              Plaintiffs,       ) Wednesday, September 7, 2022
                                  ) 9:47 a.m.
 7        vs.                     )
                                  ) MOTION HEARING
 8  MARATHON DIGITAL HOLDINGS,    )
    INC., f/k/a MARATHON PATENT   )
 9  GROUP, INC.; MERRICK D.
    OKAMOTO; FREDERICK G.                C E R T I F I E D   C O P Y
10  THIEL; and SIMEON SALZMAN,

11              Defendants.
    _____
12

13

14     REPORTER'S TRANSCRIPT OF ZOOM VIDEOCONFERENCE PROCEEDINGS

15             THE HONORABLE RICHARD F. BOULWARE, II,
                    UNITED STATES DISTRICT JUDGE
16

17

18

19  APPEARANCES:      See next page

20

21

22  COURT REPORTER:   Patricia L. Ganci, RMR, CRR
                      United States District Court
23                    333 Las Vegas Boulevard South, Room 1334
                      Las Vegas, Nevada  89101
24
    Proceedings reported by machine shorthand, transcript produced
25  by computer-aided transcription.
```

```
 1  APPEARANCES:

 2  For Plaintiff Cory Jay Wiedel:

 3       DAVID C. O'MARA, ESQ.
         THE O'MARA LAW FIRM, P.C.
 4       311 E. Liberty Street
         Reno, Nevada 89501
 5       (775) 323-1321

 6       ADAM M. APTON, ESQ.
         LEVI & KORSINSKY, LLP
 7       30 Broad Street, 24th Floor
         New York, New York 10004
 8       (212) 363-7500

 9  For Plaintiff Evan Dana:

10       DON SPRINGMEYER, ESQ.
         KEMP JONES, LLP
11       3800 Howard Hughes Parkway, 17th Floor
         Las Vegas, Nevada 89169
12       (702) 385-6000

13       FRANCIS P. MCCONVILLE, ESQ.
         LABATON SUCHAROW, LLP
14       140 Broadway
         New York, New York 10005
15       (212) 907-0700

16  For Plaintiff Lucas Marina:

17       LUCAS E. GILMORE, ESQ.
         HAGENS BERMAN SOBOL SHAPIRO, LLP
18       715 Hearst Avenue, Suite 300
         Berkeley, California 94710
19       (510) 725-3052

20       JOHN P. ALDRICH, ESQ.
         ALDRICH LAW FIRM, LTD.
21       7866 West Sahara Avenue
         Las Vegas, Nevada 89117
22       (702) 853-5490

23

24

25
```

```
 1  APPEARANCES CONTINUED:

 2  For Plaintiff Pathma Venasithamby:

 3        ANDREW R. MUEHLBAUER, ESQ.
          MUEHLBAUER LAW OFFICE, LTD.
 4        7915 West Sahara Avenue, Suite 104
          Las Vegas, Nevada 89117
 5        (702) 330-4505

 6        CHARLES H. LINEHAN, ESQ.
          GLANCY PRONGAY & MURRAY, LLP
 7        1925 Century Park East, Suite 2100
          Los Angeles, California 90067
 8        (310) 201-9150

 9  For the Defendants:

10        MAGALI MERCERA, ESQ.
          PISANELLI BICE, PLLC
11        400 South 7th Street, Suite 300
          Las Vegas, Nevada 89101
12        (702) 214-2100

13        CAROLINE HICKEY ZALKA, ESQ.
          WEIL, GOTSHAL & MANGES, LLP
14        767 Fifth Avenue
          New York, New York 10153
15        (212) 310-8527

16

17

18

19

20

21

22

23

24

25
```

────────2:21-cv-02209-RFB-NJK────────

1     LAS VEGAS, NEVADA; WEDNESDAY, SEPTEMBER 7, 2022; 9:47 A.M.
2                              --oOo--
3                          P R O C E E D I N G S
4         THE COURT:  All right, counsel.  I'm going to call this
5    case of Schlatre versus Marathon Digital Holdings, Incorporated,
6    et al., Case Number 21-cv-2209.  If the parties would announce
7    their presence for the record starting with defense counsel.
8         MS. ZALKA:  Good morning, Your Honor.  This is Caroline
9    Zalka from Weil Gotshal for all defendants.
10        THE COURT:  Okay.
11        MS. MERCERA:  Good morning, Your Honor.  Magali
12   Mercera, local counsel, on behalf of defendants.
13        THE COURT:  All right.  For the plaintiffs?  Let's see.
14   Plaintiff Dana?
15        MR. MCCONVILLE:  Good morning, Your Honor.  Francis
16   McConville from Labaton Sucharow for Movant Evan Dana.  I
17   believe my pro hac vice is in the process of being filed.  So I
18   apologize it's not currently on the docket.
19        THE COURT:  If it's not on the docket, Mr. McConville,
20   I'm sorry, but you can't actually argue.  So do you have local
21   counsel here who can?
22        MR. MCCONVILLE:  Yes, I believe Don Springmeyer is on,
23   but I'll let Don jump in.
24        MR. SPRINGMEYER:  Yes.  Good morning, Your Honor.  Don
25   Springmeyer, Kemp Jones, local counsel.

1      THE COURT: Okay. So, I mean, we are pretty clear
2 about that, Mr. McConville. I apologize, but we have to have
3 it, the application approved, prior to allowing counsel to
4 argue. And I will look again at the docket, but I don't think
5 it's been approved yet.
6      MR. SPRINGMEYER: No, it has not yet, Your Honor. This
7 is Don Springmeyer.
8      THE COURT: Okay.
9      All right, Mr. Springmeyer. So you'll have to argue
10 this motion today, then.
11      MR. SPRINGMEYER: I understand. Thank you, Your Honor.
12      THE COURT: Okay.
13      So who else do we have for plaintiff counsel here?
14      MR. GILMORE: Good morning, Your Honor. Lucas Gilmore
15 for the Movant Carlos Marina of Hagens Berman Sobol & Shapiro.
16      MR. APTON: Good morning, Your Honor. Adam Apton of
17 Levi & Korsinsky for Movant Cory Wiedel.
18      MR. LINEHAN: Good morning --
19      MR. O'MARA: David O'Mara on behalf of Movant Cory
20 Wiedel. I am local counsel for Mr. Apton.
21      MR. LINEHAN: Good morning, Your Honor. Charles
22 Linehan from Glancy Prongay & Murray on behalf of Lead Plaintiff
23 Movant Pathma Venasithamby. And with me is Andrew Muehlbauer
24 from the Muehlbauer Firm as local counsel.
25      THE COURT: Good morning.

1    So we are here on various motions as it relates to the
2 appointment of lead plaintiff in this case. And I want to
3 start, first, with I think -- is it Mr. Gilmore? Because at
4 this point the Court's leaning towards appointing Mr. Marina
5 lead plaintiff, except I can't determine what method you used
6 exactly for the determination of the loss here, FIFO. You have
7 to give me a little more detail. I know there was a back and
8 forth about the issue of stock and stock options and how that --
9 and the amount, but I'm not sure that there was clarity as
10 relates to how you came at the revised number.
11    So could you tell me that, please.
12    MR. GILMORE: Yes, Your Honor. We used a simple
13 out-of-pocket methodology that simply takes the amount of
14 dollars spent on the securities less the amount received
15 during -- during -- during the class period, and for anything
16 held over we used, you know, whatever the value of the stock was
17 according to the 90-day look-back price. There are other
18 methodologies like LIFO and FIFO that other -- and other
19 recoverable methodologies that some of the movants might have
20 used, but that is how we came. It is a purely net out-of-pocket
21 loss calculation.
22    THE COURT: Well, and I know that your client had
23 purchased the stock at different periods of time and sold shares
24 at different periods of time, but I just wanted to be clear as
25 to what the final loss amount was in terms of your calculation.

1    MR. GILMORE: Yes. It's our contention our net
2 out-of-pocket loss is $264,421.41. I know that there was some
3 other movants that I believe doing potentially a LIFO, last
4 in/first out, that came in with a number at 230,000. You know,
5 we would believe that that difference, even if the Court were to
6 apply or accept that methodology, would be immaterial.
7    THE COURT: Okay.
8    All right. Well, I'm going to let the other counsel
9 argue as to why Plaintiff Marina shouldn't be appointed lead
10 plaintiff since that's the way the Court is leaning. And it's
11 almost in a second place, not that there's second place, but
12 Mr. Wiedel, "Widel," would be in that spot. And, of course, the
13 Court could potentially appoint colead plaintiffs.
14    But, Mr. Apton, my only concern really relates to the
15 timing of the purchases and the issue of, sort of, typicality.
16 I will allow you to address that, but I'm not convinced that
17 Mr. Wiedel by himself would be an appropriate lead plaintiff.
18    MR. APTON: Sure. So, Your Honor, Adam Apton for
19 Mr. Wiedel. I appreciate your comments.
20    Obviously I guess the reason why we're in, as Your
21 Honor put it, second place is because our financial interests in
22 the case is, relatively speaking, larger than the other movants.
23 We have a loss of almost $500,000.
24    To address the question as to Mr. Wiedel's purchases,
25 they're in the class period, the way the class period has been

1  defined from the start of this case all the way through the
2  present date.  What's important, Your Honor, to realize is not
3  only were Mr. Wiedel's purchases in the class period, but what
4  undermines Mr. Gilmore or Mr. Marina's counsel's argument is
5  that there is a post-class period disclosure relating to the
6  resignation of the CEO.  So when there is a consolidated or an
7  amended complaint filed after Your Honor makes a decision, the
8  class period will certainly include purchases on November 15th
9  and thereafter.
10         THE COURT:  So I don't dispute that.  I mean, the issue
11 is typicality.  I mean, that's -- I'm not saying that,
12 Mr. Apton.  So two questions.
13         MR. APTON:  Okay.
14         THE COURT:  I mean, obviously there is -- there would
15 still be -- in terms of the breadth of the class, that would not
16 necessarily be typical for many members of the class, first
17 question.  Second question is I want you to address, and I'm
18 going to come back to Mr. Gilmore and other counsel, the issue
19 of colead plaintiffs.
20         So you can take those questions in whatever order you
21 want, but can you address them both, please.
22         MR. APTON:  So, Your Honor, in terms of typicality,
23 Mr. Wiedel did purchase within the class period on the open
24 market.  So he is typical.  To put a finer point on it, whether
25 he faces a unique defense because of his purchases, no.  This is

1   an issue that will affect many class members.  I mean, three out
2   of the five initial plaintiffs, lead plaintiffs, purchased on
3   November 15th.  This will be an issue that undoubtedly gets
4   litigated at class certification no matter who the lead
5   plaintiff is.  So it's not a unique defense, certainly not one
6   capable of disqualifying Mr. Wiedel.
7           To Your Honor's second point about colead counsel,
8   every firm on this call, we've worked together in some capacity
9   in some case or some period of time.  I've worked together with
10  the Hagens Berman firm.  Can we do it?  Should we do it?  I
11  think that's Your Honor's call.  Courts have done it in both the
12  Ninth and Second Circuits.  It's not uncommon.  And, candidly
13  and practically speaking, Your Honor, if it allows Mr. Wiedel to
14  serve as a lead plaintiff being a colead plaintiff, he would be
15  open to that.  I have spoken with him.  And so, you know, I'll
16  stop there.
17          THE COURT:  Okay.  Well, let me let other plaintiffs'
18  counsel in on this debate as we think about the possibility of
19  these two lead plaintiffs.
20          So I'll start with you, Mr. Linehan.
21          MR. LINEHAN:  Good morning, Your Honor.
22          My argument here is that Mr. Venasithamby is really the
23  only one with clean hands and the only one who doesn't have
24  major issues of all the lead plaintiff movants.
25          To be clear on Wiedel, I don't think his counsel's

1  contesting that he purchased after the corrective disclosure.
2  And I think if this Court were to appoint him as lead counsel, I
3  think that might be the only case to have ever appointed an
4  investor as lead plaintiff who purchased -- admittedly purchased
5  all of its shares after the corrective disclosure.  Because as
6  every other movant has pointed out, it creates all kinds of loss
7  causation issues and reliance issues that are sure to become a
8  distraction because his entire claim hinges on him being able to
9  make that.  So I think for that reason the Court should reject
10 Mr. Wiedel.
11         With respect to the two other lead plaintiff movants
12 who are still seeking appointment as lead plaintiff, Mr. Marina
13 and Mr. Dana, they have major, major errors in their
14 submissions.  Mr. Marina has submitted a false certification
15 which he had to correct, initially overstated his loss by
16 $200,000, which is almost 50 percent -- you know, 100 percent of
17 what his loss is now.
18         Mr. Dana submitted, as we pointed out in Pathma's
19 opposition, submitted transaction information in his
20 certification that doesn't make sense.  He claimed to have made
21 purchases on I believe the date is October 19th, and those are
22 all of the purchases that he held through the final corrective
23 disclosure.  None of those purchases are at prices that we can
24 tell are within the daily or post-market range.  So there's no
25 explanation as to how those transactions are even possible.  And

1  I think the most likely explanation is that his certification
2  was just false.
3         So with Marina submitting a false certification,
4  massively overstating losses, Dana submitting a false
5  certification, and Mr. Wiedel purchasing all of his shares after
6  the corrective disclosure, admittedly, really the only one that
7  has standing here and clean hands is my client,
8  Mr. Venasithamby.
9            THE COURT:  Okay.  How about for Mr. or Ms. Evans?
10           Oop.  Hold on.  Other plaintiffs' counsel, I'm sorry?
11 I mean, Evan Dana.  Excuse me.  Instead of saying Dana I'm
12 saying Evans.  Dana.  Excuse me.
13           Hello?  Do we have counsel?  I thought --
14           MR. SPRINGMEYER:  Yes, there.  I'm sorry.  I'm trying
15 to unmute.
16           THE COURT:  I was, like, wait a minute.
17           MR. SPRINGMEYER:  Okay.  Don Springmeyer, Your Honor.
18 Thank you.
19           First, I want to point out that the attack on the
20 certification is misplaced.  There are some errors in it which
21 we are in the process of correcting, but it's not false in the
22 sense of an intentional misleading.  And aside from that
23 entirely, as Your Honor will see from the docket, we
24 subsequently ceded our bid for leadership to support Marina.
25           THE COURT: Okay.  That's what I thought.  I just

1  wanted to allow you to respond given the statement about false
2  certification.
3         MR. SPRINGMEYER:  Right.  Not true.
4         THE COURT:  Okay.
5         And then who have I left out?  Schlatre.  Schlatre?
6         (Pause.)
7         THE COURT:  Hello?
8         MR. APTON:  And, Your Honor, this is Mr. Apton for
9  Mr. Wiedel.  I don't think Schlatre or his counsel appeared
10 today.
11        THE COURT:  Okay.  I thought that I had them on my
12 list.  I'm sorry.  I didn't see that.  I wanted to make sure
13 everyone had a fair opportunity.
14        Mr. Gilmore, I'm going to come back to you to respond
15 to some of the arguments, you and Mr. Weidel.  And then we can
16 sort of wrap this up.
17        MR. GILMORE:  Yes.  Thank you, Your Honor.
18        I've been informed by local counsel about how much the
19 Court reviews the papers in advance, and certainly that's the
20 case here.  I think we lay out with Mr. Wiedel exactly why it's
21 atypical.  Reliance is a key element in every claim.  Here,
22 undisputedly Mr. Wiedel bought after the information was
23 corrected --
24        THE COURT:  Well, I'm not -- I don't want you to focus
25 on Mr. Wiedel.  I want you to focus on some of the issues

1  related to the arguments regarding errors in the filings because
2  certainly it is something that the Court can take into
3  consideration.
4              MR. GILMORE: Oh. Yes. Absolutely. I think it's an
5  overstatement to say that it was a filed false certification.
6  There was no intent there. And if any, the blame should be on
7  counsel.
8              There was one error in the certification that referred
9  to purchases being in April and November 2022 when it was
10 clearly in 2021. That was an auto-correct error from an Excel
11 spreadsheet. We corrected that. It was clear to the other
12 movants that that was an error.
13             The other having to do with a loss calculation, that
14 has to do with, you know, an arcane-type calculation with --
15 with option contracts. Option contracts are worth the
16 equivalent of 10 shares, and for one of our calculations on a
17 sale we, you know, did not multiply the times 10.
18             You know, this has been done before. We cited to the
19 Solar City case, to the Silver Wheaton case. It's quite common,
20 unfortunately, for lead plaintiff movants to make errors. But
21 the goal of the PSLRA is not for a perfect plaintiff or for the
22 perfect certification. It's for an investor-driven lawsuit, an
23 investor with significant financial interests, and that's
24 typical and adequate. And we submit that Mr. Marina certainly
25 meets that.

1            THE COURT:  Okay.  Thank you.

2            Well, I do appreciate you all clarifying some issues,

3 but I am going to go ahead and grant the motion for Mr. Marina

4 to be lead plaintiff in this case.  I do find based upon the

5 relevant factors in terms of his financial interests as well as

6 the other Rule 23 and particularly the issues of typicality and

7 considering the issue of the unique defense that may apply and

8 the breadth of the class that Mr. Marina is most appropriately

9 situated to be lead plaintiff in this case.  And I don't find,

10 sort of, him being presumptively lead plaintiff has been

11 rebutted by the submissions.  And so that will be the order of

12 the Court.

13            So I will grant the motion for Mr. Marina and deny

14 without prejudice as it relates to the other moving parties.

15            Is there anything else that we need to do today?  I'm

16 not going to issue a written ruling.  I'll issue a minute order

17 of today's ruling, oral ruling.  The transcript of this hearing

18 will be the opinion and order of the Court.

19            Anything else we need to do today then?  Mr. Gilmore?

20            MR. GILMORE:  No, Your Honor.  Pursuant to the Court's

21 order, we'll meet and confer with defense counsel and come up

22 and present a schedule for the filing of the amended complaint

23 and the motion to dismiss.

24            THE COURT:  Okay.  So we'll give you two weeks to be

25 able to submit a proposed schedule for the Court to approve in

1  this case.
2          Anything else, Mr. Apton?
3          MR. APTON:  Yes, Your Honor.  Your Honor had mentioned
4  that the order was without prejudice.  So upon the filing of an
5  amended complaint that presumably will include November 15th
6  purchases for the class period, should motions be renewed at
7  that point?
8          THE COURT:  Well, I said it without prejudice because
9  things can happen in these cases, Mr. Apton, that, as you all
10 know, as relates to plaintiffs and people sometimes dropping out
11 for various reasons.  And it's for that reason I said without
12 prejudice; not because I would anticipate motions being refiled
13 if the information is as I believe it to be based upon the
14 moving papers.
15         So, in other words, I take your point about
16 Mr. Wiedel's claim being within the class period, but that to me
17 would not be sufficient to overcome your considerations with
18 respect to lead plaintiff here.  And so if something new comes
19 out that has not been raised today or happens in the case, that
20 would be a basis for a new motion, Mr. Apton, but not simply to
21 reargue to me anything based upon the amended complaint that may
22 simply elaborate more of what we've discussed today.
23         MR. APTON:  Thank you, Your Honor.
24         THE COURT:  Okay.
25         All right.  Anything from the defendants?  I know you

1  all have been largely silent here, not that you need to say
2  anything.  Anything about the schedule for the scheduling order?
3          MS. ZALKA:  No, Your Honor.  Silence is a virtue, and
4  I'll continue to abide by it.
5          THE COURT:  Okay.
6          Mr. Springmeyer, anything else?
7          MR. SPRINGMEYER:  No.  Thank you, Your Honor.
8          THE COURT:  Mr. Linehan, anything else?
9          MR. LINEHAN:  No.  Thank you, Your Honor.
10         THE COURT:  All right.  Anything else from any other
11 counsel who were on the call?
12         (No response.)
13         THE COURT:  All right then.  Well, I appreciate
14 everyone's time and your patience.  Everyone, please be well and
15 be safe.  We'll be adjourned.  Thank you.
16         MR. APTON:  Thank you, Your Honor.
17         MS. ZALKA:  Thank you, Your Honor.
18         MR. GILMORE:  Thank you.
19         MS. MERCERA:  Thank you, Your Honor.
20         (Whereupon the proceedings concluded at 10:06 a.m.)
21
22
23
24
25

2:21-cv-02209-RFB-NJK

--oOo--

COURT REPORTER'S CERTIFICATE

       I, PATRICIA L. GANCI, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Date:  September 9, 2022.

                              /s/ **Patricia L. Ganci**
                              Patricia L. Ganci, RMR, CRR
                              CCR #937

PATRICIA L. GANCI, RMR, CRR     (702) 385-0670